# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MANUEL GARZA, ET AL.**

**CIVIL ACTION**

**VERSUS**

**NUMBER 13-742-SDD-EWD**

**PHILLIPS 66 COMPANY, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2016.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MANUEL GARZA, ET AL.

VERSUS

PHILLIPS 66 COMPANY, ET AL

CIVIL ACTION

NUMBER 13-742-SDD-EWD

MAGISTRATE JUDGE'S REPORT

Before the Court is a Motion to Sever Plaintiffs Due to Misjoinder, filed by defendant Rowan Companies, Inc. ("Rowan"). (R. Doc. 75). The motion is opposed.[1] Defendant ENSCO Offshore Company filed a Motion to Join in Rowan's Motion to Sever Plaintiffs Due to Misjoinder,[2] which was granted by this Court.[3]

Plaintiffs filed a Seamen's Petition for Damages in state court seeking recovery for injuries allegedly sustained as a result of exposure to asbestos-containing drilling mud while they were employed with defendants Rowan Companies, Inc., ENSCO Offshore Company, Harbinger Group, Inc., Diamond Offshore Company, Nustar Energy, L.P., Kaneb Management Company, L.L.C., and Helmerich & Payne International Drilling Co. (collectively referred to as "Jones Act Defendants"). Plaintiffs also named as defendants Union Carbide Corporation, Montello, Inc., Chevron Phillips Chemical Company, L.P.,

---

[1] R. Doc. 81, filed by all plaintiffs.   Defendant also filed a reply memorandum.   (R. Doc. 85).

[2] R. Doc. 86.

[3] R. Doc. 87.

1

Coastal Chemical Co., L.L.C., and Nico Supply Company, Inc. (collectively referred to as "Asbestos Defendants"), who allegedly manufactured and/or distributed the asbestos-containing drilling mud. Plaintiffs asserted claims under Louisiana state law, general maritime law, and the Jones Act, 46 U.S.C. § 30104, *et seq*. The action was removed based upon this Court's original jurisdiction over the plaintiffs' general maritime claims under 28 U.S.C. § 1333 and 28 U.S.C. § 1441.[4]

Pursuant to Court Order, plaintiffs filed an Amended Complaint providing a more detailed description of each plaintiff's work history and alleged exposure to asbestos-containing products. (R. Doc. 52). The Amended Complaint asserts that each plaintiff is suffering from asbestosis and asbestos related lung disease due to exposure to Flosal, a product of Drilling Specialties Company (now "Chevron Phillips Chemical Company, LP"), and to Visbestos and Super Visbestos, products of Union Carbide Corporation and Montello, Inc., during their employment with the Jones Act Defendants. *Id*. Specifically, plaintiffs allege:

1. Manuel Garza was exposed to asbestos from 1977 until 1986 while working for Rowan International, Inc. and Rowandrill Inc., which eventually became Rowan Companies, Inc. ("Rowan"). During that time, Garza was employed as a mud man, roustabout, roughneck, floorhand, pumps, derrickman, and drilling superintendent, and he was constantly in and out of the chemical room mixing drilling mud. Garza worked offshore in the Gulf of Mexico on drilling rigs and spent most of his time on the M/V Rowan Midland.

2. Larry Laborde was exposed to asbestos from 1976 until 1981 while working for Diamond M Drilling Company (hereinafter "Diamond"). During his employment, Laborde worked as a roustabout, roughneck, derrickman, and motorman, and he was constantly in and out of the mud room mixing drilling mud. Laborde worked on several drilling vessels, including Inland Barge No. 14, Inland Barge No. 33, and other inland barges, including Cocodrie, Pecan Island, White Lake, and Timbalier Bay. Laborde also worked offshore in the Gulf of Mexico on the M/V Diamond M 99, a jack-up rig.

---

[4] *See* R. Docs. 1, 38, and 43.

3. Lynn Laborde was exposed to asbestos from 1976 until 1986 while working for Noble Drilling Corp.,[5] Diamond, and Penrod Drilling Company (hereinafter "Penrod"), as a roughneck, derrickhand, and driller.  During his employment with Noble, Laborde worked on Inland Barge 3 and spent most of his time mixing drilling mud inside the mudroom.  Laborde also worked on Inland Barge No. 33 and M/V Diamond M 99 while working for Diamond and he worked on Penrod 98 while working for Penrod.

4. Michael Northcutt was exposed to asbestos from 1973 until 1986 while working offshore for Penrod and ENSCO Asia Company as a roughneck, tool pusher, and driller.

5. Larry A. Smith was exposed to asbestos from 1971 until 1986 while working for Diamond and Rowan.  Smith worked as a roughneck, derrickman, tool pusher, and driller on several of Diamond's drilling rigs in the Gulf of Mexico, including the M/V Diamond M New Era, the M/V Diamond Star, and the M/V Diamond M Victory.  Smith also worked on an inland barge for Rowan as a floorhand and roughneck.

6. Donald Stephens was exposed to asbestos in 1979 while working for Diamond as a roughneck and derrickhand on several drilling rigs in the Gulf of Mexico, including the M/V Diamond M Century and the Diamond M 99.

7. Steven Goode was exposed to asbestos from 1974 until 2008 while working in the Gulf of Mexico for Helmerich & Payne International Drilling Co.

8. Wayne Buckley was exposed to asbestos in 1977 while working for Ocean Drilling and Exploration (ODECO) L/K/A Murphy Exploration & Production Company (Murphy)[6] as a roustabout and roughneck on rigs in the Gulf of Mexico.  Buckley was also exposed to asbestos from 1980 until 1988 while working as a roughneck and roustabout for Penrod on rigs in the Gulf of Mexico, including the M/V Penrod 68, the M/V Penrod 69, the M/V Penrod 55, and the M/V Penrod 57.

9. Charles Easterling was exposed to asbestos from 1978 until 1988 while working for Penrod as a roughneck, derrickhand, mud engineer, and driller.  Easterling worked on several jack-up rigs in the Gulf of Mexico, as well as inland barges in South Louisiana.

10. Jerry Johnson was exposed to asbestos from 1978 until 1984 while working offshore for Penrod on inland barges in South Louisiana and jack-up rigs in the Gulf of Mexico.

---

[5] Noble Drilling Corp. is not named as a defendant in this action.

[6] Neither ODECO nor Murphy are named as defendants in this action.

11. James Little was exposed to asbestos in 1977 while working as a roustabout on a rig for Zapata Off-Shore Co., Inc., and again in 1978 while working as a roughneck on an inland barge for Diamond M Drilling Co & Subsidiaries.

12. Paul Luckey was exposed to asbestos while working offshore for Dual Drilling Offshore Company from 1978 until 1979, while working for Dual Marine Drilling Company from 1979 until 1984, and while working for Dual Marine Company from 1980 until 1984. Luckey was also exposed to asbestos while working for ENSCO Asia Company in 1983 on Ensco Rig 16, Rig 23, Ensco 24, and Ensco 92.

R. Doc. 52.[7]

Rowan subsequently filed a Motion to Sever Plaintiffs Due to Misjoinder, asserting that the 13 plaintiffs were improperly joined under Federal Rule of Civil Procedure 20(a) and that their cases should be severed into 13 individual suits pursuant to Fed. R. Civ. P. 21. Rule 20(a) allows the permissive joinder of plaintiffs if their claims arise out of the same transaction or occurrence and there is question of law or fact common to all plaintiffs. Rowan argues the plaintiffs' claims do not arise out of the same transaction or occurrence because they are each predicated on a unique work history, medical history, time of alleged exposure, location of alleged exposure, and degree of alleged exposure to different products. Rowan also asserts that the plaintiffs' claims do not involve a common question of fact or law because each plaintiff asserts claims against different subsets of Asbestos Defendants and Jones Act Defendants, which will require particularized factual inquiries and different legal theories to prove liability. Since the 13 plaintiffs do not satisfy either requirement for permissive joinder under Rule 20(a), Rowan argues their cases should be severed to avoid jury confusion and prejudice the defendants.

Plaintiffs assert both requirements of Rule 20(a) are satisfied in this case, especially since courts have broad discretion in determining the requirements of Rule 20 and misjoinder in an effort to promote

---

[7] Plaintiffs did not provide a detailed work history for plaintiff James Wells.

4

judicial economy.   Courts also consider the following five factors when deciding whether claims should be severed pursuant to Rule 21, which plaintiffs contend support joinder in this case: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for separate claims.   Plaintiffs further argue that the testimony and evidence in their cases will be exactly the same with the exception of testimony unique to each plaintiff regarding their exposure and medical history.   Plaintiffs contend there is little to no risk of jury confusion, prejudice, or denial of due process because this Court can provide the jury with any necessary cautionary instructions.   Alternatively, plaintiffs argue their claims should remain consolidated until discovery is complete, at which point Rowan's motion can be reconsidered because the Court and the parties will have complete information regarding the overlap of witnesses and other trial evidence.

## Applicable Law

Under Rule 21 of the Federal Rules of Civil Procedure, a district court has broad discretion to sever improperly joined parties.   *Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Since Rule 21 does not provide any standards by which district courts can determine if parties are misjoined, courts have looked to Rule 20 for guidance.   See *Pan Am. World Airways, Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 523 F.2d 1073, 1079 (9th Cir. 1975).   Rule 20(a)(1) provides that:

> Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the

5

action.

Fed. R. Civ. P. 20.   Courts have described Rule 20 as creating a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and (2) there is at least one common question of law or fact linking all claims.   *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 574 n.11 (5th Cir. 1995).   "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged."   *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010), quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

When applying the two-prong test, courts consider whether there is a logical relationship between the claims and whether there is any overlapping proof or legal question.   *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *1 (E.D. La. Mar. 20, 2001) (quotation and citation omitted). Courts also consider whether settlement or judicial economy would be promoted, whether prejudice would be averted by severance, and whether different witnesses and documentary proof are required for separate claims.   *Adams v. Big Lots Stores, Inc.*, No. 08-4326, 2009 WL 2160430, at *2 (E.D. La. July 16, 2009) (citation omitted); See *In re Rolls Royce Corp.*, 775 F.3d 671, 680 n.40 (5th Cir. 2014).   However, even if the two-prong test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness.   *Acevedo*, 600 F.3d at 521.

## Analysis

### Defendant Has Failed To Show That The Plaintiffs Were Improperly Joined Under Fed. R. Civ. P. 20(a)

6

The original Seamen's Petition for Damages alleged that the plaintiffs were exposed to asbestos-containing products while working in various oil fields and facilities and on offshore oil rigs in the Gulf of Mexico for the Jones Act Defendants. (R. Doc. 1-3). By providing more detailed information regarding each plaintiff's work history and alleging exposure to the same asbestos-containing products, the Amended Complaint indicates that joinder is proper in this case. (R. Doc. 52). Although Rowan argues that joinder of the 13 plaintiffs in this case was improper, it fails to meet its burden of proving that the plaintiffs' claims do not satisfy the requirements for permissive joinder under Rule 20 of the Federal Rules of Civil Procedure.

The Amended Complaint shows that there is a common question of law or fact among the plaintiffs' claims because the plaintiffs' allege that every plaintiff was exposed to the same asbestos-containing products produced by the same Asbestos Defendants while at their worksites. Specifically, plaintiffs assert that they were all exposed to Flosal, a product of Drilling Specialties Company (now "Chevron Phillips Chemical Company, LP"), and to Visbestos and Super Visbestos, products of Union Carbide Corporation and Montello, Inc. Plaintiffs also allege that they are all currently suffering from the same disease, namely asbestosis and asbestos related lung disease. "When the plaintiffs suffer from the same disease, the economy derived by not rehashing the etiology and pathology of the particular disease will be great, while the concomitant prejudice will be minimal." *In re Asbestos Litigation*, 173 F.R.D. 81, 85 (S.D.N.Y. 1997) (hereinafter "the *Asbestos Litigation* case"), citing *Malcolm v. National Gypsum Co.*, 995 F.2d 346, 351 (2nd Cir. 1993).

Rowan argues that the plaintiffs' claims do not present a common question of fact or law, as required by Rule 20(a), because none of the plaintiffs sued the same set of defendants. Rowan alleges that each plaintiff asserts claims against different subsets of Asbestos Defendants and Jones Act

Defendants, which will require differing legal theories to prove liability and particularized factual inquiries.    Relying heavily upon the *Asbestos Litigation* case, plaintiffs argue that there are several issues of law or fact common to their claims, including common worksites, similar occupations, similar times of exposure, and the nature and extent of the disease suffered.[8]    Although the Amended Complaint alleges that the plaintiffs worked at different locations during their employment for the Jones Act Defendants, plaintiffs assert that they share a common worksite because all plaintiffs worked on drilling rigs in the Gulf of Mexico.    Plaintiffs' argument is supported by the *Asbestos Litigation* case.    Even though the plaintiffs in that case worked at different locations, the court held, "Much of the jobsite evidence would necessarily be individualized, in view of the differences among the plaintiffs' worksites.    However, this will not eliminate the savings of time and effort which will be gained by consolidation . . . ."    *In re Asbestos Litigation*, 173 F.R.D. at 85 (citation omitted).

Plaintiffs also claim that they share similar occupations because they were all employees of drilling companies working with or around asbestos-containing products on drilling rigs.    In the *Asbestos Litigation* case, plaintiffs similarly worked for different employers in different capacities, including sheetmetal worker, welder, mechanist and steamfitter, mason tender and laborer, and valve dismantler.    *Id.*    Despite this fact, the court concluded, "Although there are differences among the specific occupations of the plaintiffs here, '[a]ll plaintiffs were exposed to asbestos in a similar manner—as tradespeople working with or around products containing asbestos.'"    *Id.* (quotation omitted).    The

---

[8] Although the *Asbestos Litigation* case addresses a motion to consolidate actions for trial under Rule 42(a), the court's analysis and conclusions are instructive for joinder purposes because Rule 42(a) only allows consolidation of actions that involve "a common question of law or facts."    Fed. R. Civ. P. 42(a).    Thus, the *Asbestos Litigation* court's analysis of whether there exists "a common question of law or facts" for purposes of consolidation under Rule 42(a) is identical to the analysis used to determine whether there is a "common question of law or fact" for purposes of joinder under Rule 20(a).

court also held, "notwithstanding the individual differences among the occupations of the plaintiffs, shared testimony as to the airborne fibers from the asbestos-containing products with which plaintiffs worked should not change significantly from one case to another. Accordingly, consolidation will 'eliminate duplicative general evidence concerning exposure to certain asbestos products.'" *Id.* (quotation omitted). According to the holding in the *Asbestos Litigation* case, plaintiffs share similar occupations because they were tradespeople who were exposed to asbestos in a similar manner due to their similar occupations.

Plaintiffs further assert that they share similar times of exposure to the asbestos-containing products because they were all exposed to the products at various times between 1965 and 1998 with substantial overlap. The substantial overlap in exposure times is evidenced by the fact that 10 of the 13 joined plaintiffs were exposed to asbestos-containing products in the 1970s and 1980s and two of the remaining plaintiffs were exposed to such products in the late 1970s.[9] In the *Asbestos Litigation* case, the plaintiffs were exposed to asbestos products over a longer period of time, from 1940 to 1986. *In re Asbestos Litigation*, 173 F.R.D. at 85. Nonetheless, the court concluded, "In light of the 'considerable overlap' among the various plaintiffs' exposure periods, state of the art testimony will certainly be offered by plaintiffs concerning the entire time period in question." *Id.* (citation omitted). Since the plaintiffs in this case were exposed to asbestos-containing products over a shorter period of time, the *Asbestos Litigation* case supports plaintiffs' argument that they share similar times of exposure with substantial overlap.

As demonstrated above, the Amended Complaint establishes that there are several questions of law or fact common to the 13 joined plaintiffs in this case, thereby satisfying the first requirement for

---

[9] The Amended Complaint does not provide a detailed work history for plaintiff James Wells. *See, supra,* note 6.

permissive joinder under Rule 20(a).

Turning now to the second requirement of Rule 20(a), Rowan argues that the plaintiffs' claims do not arise out of the "same transaction or occurrence" because they are each predicated on a unique work history, medical history, time of alleged exposure, location of alleged exposure, and degree of alleged exposure to difference products.   As shown in the *Asbestos Litigation* case, however, several of these factors support joinder of the 13 plaintiffs in this case.   Further, as one commentator noted, "[C]ourts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court."   7 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1653 (3d ed.) (citations omitted).

Plaintiffs contend the testimony and evidence in their cases will be exactly the same with the exception of testimony unique to each plaintiff regarding their exposure and medical history. Specifically, plaintiffs assert: (1) the same employee representative will testify to prove liability; (2) the same testimony will be presented by the manufacturing and distributor defendants as to each plaintiff; (3) the same state of the art testimony will be presented; (4) the same evidence regarding the etiology and pathology of asbestosis will be used; (5) the same testimony will be used to educate the jury on the use of drilling mud; (6) the same testimony will be used to educate the jury on how employees were exposed to drilling mud; (7) the same experts will testify regarding industry standards; and (8) the same documents will be used to support all of the testimony.

Rowan fails to address the plaintiffs' arguments regarding overlapping evidence and testimony in its Reply Brief.   Instead, Rowan asserts the "same transaction or occurrence" requirement is not met in this case because each of the 13 joined plaintiffs worked for different employers on different rigs for

different operators at different periods of time spanning 30 years and they were allegedly exposed to different products in different concentrations. However, Rowan's argument fails to recognize that when courts are determining whether the "same transaction or occurrence" requirement is met, they consider whether there is "*any* overlapping proof or legal question." *Weber v. Lockheed Martin Corp.*, No. 00-2876, 2001 WL 274518, at *1 (E.D. La. Mar. 20, 2001) (quotation omitted) (emphasis added). Rowan has not shown that there will be no overlapping proof or legal question raised by the plaintiffs' claims. Further, plaintiffs' claims raise common questions of law because each plaintiff's claim will involve state law, maritime law, and Jones Act law.

Finally, there is no support for Rowan's assertion that joinder of the 13 plaintiffs in this case will result in jury confusion and prejudice to the defendants. With respect to jury confusion, one court has held, "This argument is outright rejected because any potential confusion to the jury can surely be remedied at trial through a limiting instruction by the court. *See Hanley v. First Investors Corp.*, 151 F.R.D. 76 (E.D. Tex. 1993)." *Guedry v. Marino*, 164 F.R.D. 181, 185 (E.D. La. 1995); See *Fassbender v. Treasure Chest Casino*, No. 08-5265, 2008 WL 576229, at *4 (E.D. La. Feb. 28, 2008) (citations omitted). The Fifth Circuit has similarly explained that "jury instructions 'can ameliorate a jury's confusion' in this situation, and we are mindful of '[t]the rule that juries are presumed to follow their instructions.'" *United States v. Cisneros-Gutierrez,* 517 F.3d 751, 762-63 (5th Cir. 2008) (quotations omitted). Rowan's arguments regarding jury confusion are without merit because any potential jury confusion and prejudice can be limited by this Court's instructions to the jury.

## Conclusion

The Motion to Sever Plaintiffs Due to Misjoinder, filed by defendant Rowan Companies, Inc. and

adopted by ENSCO Offshore Company, does not demonstrate that the 13 plaintiffs in this case are improperly joined under Federal Rule of Civil Procedure 20(a).    (R. Docs. 75 and 86).

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that the Motion to Sever Plaintiffs Due to Misjoinder, filed by defendant Rowan Companies, Inc., be denied.    (R. Doc. 75).    For the same reasons, it is the recommendation of the magistrate judge that the motion also be denied as to ENSCO Offshore Company.    (R. Doc. 86).

Signed in Baton Rouge, Louisiana, on March 4, 2016.


**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

12